# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CONNECTICUT STONE INDUSTRIES, LLC, <br><br> Defendant. | Civil Action No. 17-2341 (ABJ) |

## MEMORANDUM OPINION

Plaintiffs Bricklayers & Trowel Trades International Pension Fund ("IPF") and International Masonry Institute ("IMI"), by and through their Trustees, brought this action against defendant Connecticut Stone Industries, LLC pursuant to the Employee Retirement Income Security Act ("ERISA"), *as amended*, 29 USC § 1132 *et seq*. *See* Compl. [Dkt. # 1]. They allege that defendant failed to submit reports to them and contribute the proper amounts owed under the relevant collective bargaining agreements ("CBAs"). *Id.* ¶ 10.

Because defendant failed to respond to the complaint, the Clerk of the Court filed an entry of default against defendant on December 28, 2017 pursuant to Federal Rule of Civil Procedure 55(a). Clerk's Entry of Default J. [Dkt. # 5]. Now pending before the Court is plaintiffs' motion for default judgment pursuant to Rule 55(b)(2). Mot. for Entry of J. by Default and to Close Case [Dkt. # 7] ("Pls.' Mot."); Mem. in Supp. of Pls.' Mot. [Dkt. # 7-1] ("Pls.' Mem."). Plaintiffs seek unpaid contributions, interest, liquidated damages, and attorneys' fees and costs, in addition to equitable relief in the form of injunctions compelling defendant to submit to a payroll audit and to

comply with its reporting and contribution obligations under the CBAs moving forward. Compl. ¶ 41; Pls.' Mem. at 4–16.

Having closely reviewed plaintiffs' submissions, applicable case law, statutory authority, and the record of the case as a whole, the Court will grant plaintiffs' motion for default judgment.

## BACKGROUND

IPF and IMI are employee benefit plans subject to ERISA that provide retirement, disability, and related benefits to employees working in the construction industry as bricklayers and related trades. Compl. ¶¶ 1–2; Decl. of David F. Stupar [Dkt. # 7-3] ("Stupar Decl.") ¶ 3; Pls.' Mem. at 2. The benefits provided by plaintiffs are financed by contributions made by employers, such as the defendant, who are signatories to collective bargaining agreements with International Bricklayers and Allied Craftworkers and its affiliated local unions. Pls.' Mem. at 2; *see* Compl. ¶¶ 7–8. At all times relevant to this lawsuit, defendant has been bound to CBAs with International Union of Bricklayers and Allied Craftworkers Local Union No. 65 – Connecticut. Compl. ¶ 7. Those CBAs "govern the wages, benefits and terms and conditions of employment of certain employees performing work for the [d]efendant." *Id.* Pursuant to the CBAs, defendant is obligated to make contributions to plaintiffs in order to fund the benefits provided to defendant's employees. *Id.* ¶ 8; Stupar Decl. ¶ 3; *see also* Ex. 1 to Stupar Decl. [Dkt. # 7-3] ("Collection Procedures").

Plaintiffs' Trustees adopted the Collection Procedures to govern the collection of employer contributions and reports. Stupar Decl. ¶ 4; *see* Collection Procedures. Under these procedures, contributions and reports are due on or before the fifteenth day of each month, following the month in which the work is performed. Stupar Decl. ¶ 5; Collection Procedures at 1. The Collection Procedures dictate that if an employer is delinquent, it may be assessed interest at the rate of fifteen

percent per annum from the due date of each monthly payment. Compl. ¶ 11; *see also* Stupar Decl. ¶ 5; Collection Procedures at 2. Further, an employer may be liable for an amount equal to the greater of an additional calculation of interest on the unpaid contributions at the rate of fifteen percent per annum from the due date of each monthly payment, or liquidated damages in the amount of twenty percent of the total contributions owed. Compl. ¶ 12; Stupar Decl. ¶ 5; Collection Procedures at 2.

After defendant failed to submit the required remittance reports and pay the necessary contributions for several months, plaintiffs filed a complaint in this Court on November 7, 2017 seeking to collect "all contributions, interest, liquidated damages and attorneys' fees and costs." Compl. ¶ 31. They allege that for the months of December 2016, January 2017, and February 2017, defendant submitted reports, but failed to pay $5,533.69 in contributions owed to plaintiffs under the CBAs. Compl. ¶ 16. Plaintiffs also claim that defendant failed to submit reports and to pay the contributions owed to plaintiffs between March 2017 and September 2017, and that based on estimated contribution rates, defendant owes plaintiff IPF $21,611.55 and plaintiff IMI $1,516.90. *Id.* ¶¶ 20–27. Further, they allege that defendant has failed to pay interest or any additional damages owed based on these delinquent payments. *Id.* ¶¶ 16, 28.

On November 13, 2017, a private process server served the summons and complaint on defendant's registered agent. Aff. of Serv. [Dkt. # 3]. Defendant failed to answer or otherwise respond to plaintiffs' complaint, so plaintiffs filed a request for the Clerk's entry of default on December 27, 2017, which was supported by an affidavit for default. *See* Req. for Clerk's Entry of Default [Dkt. # 4]; Aff. in Supp. of Default [Dkt. # 4-1]. The Clerk entered default against defendant the next day, *see* Clerk's Entry of Default [Dkt. # 5], and plaintiffs subsequently filed this motion for default judgment on January 30, 2018. Pls.' Mot.

3

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered, a court may enter a default judgment order pursuant to Rule 55(b). Whether default judgment is appropriate is in the discretion of the trial court. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Upon entry of default by the Clerk of the Court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30, citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* (citation omitted). "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (citation omitted)."

A court granting default judgment against a defendant covered by ERISA for failure to pay contributions owed under CBAs must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) any other legal or equitable relief it deems appropriate. 29 U.S.C. § 1132(g)(2); *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 31. "The unpaid contributions, interest, and liquidated damages generally

4

are considered 'sums certain' pursuant to the calculations mandated in ERISA and the parties' agreements." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 31, citing *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984).

## ANALYSIS

Since the Clerk of the Court filed an entry of default against defendant, the factual allegations in the complaint are taken as true. *See R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. Therefore, the Court finds that plaintiffs have alleged sufficient facts to support their claims and, given "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense," *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008), quoting *Gutierrez v. Berg Contracting Inc.*, No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000), the Court concludes that default judgment is appropriate in this case.

**I.     Plaintiffs are entitled to monetary damages.**

    **A.     Reported Months**

Although the default establishes defendant's liability, the Court must make an independent determination as to the sum to be awarded in the judgment unless the amount of damages is certain. *Adkins*, 180 F. Supp. 2d at 17. Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. Pursuant to the relevant CBAs, defendant was obligated to submit monthly reports to plaintiffs that indicated the contributions it owed, and then to pay those contributions. Compl. ¶ 8; Stupar Decl. ¶¶ 3, 5; *see also* Collection Procedures at 1–2.

For the months of December 2016, January 2017, and February 2017, defendant submitted monthly remittance reports to plaintiffs but it did not pay the contributions owed. Compl. ¶ 16; Stupar Decl. ¶ 9; Pls.' Mem. at 5. Because the sums owed can be precisely calculated based on the reports submitted for these months, the Court will order defendant to pay the amounts specified in the declaration of David Stupar, the Executive Director of IPF. *See* Stupar Decl. ¶¶ 1, 9. He avers that "[b]ased on the hours of work contained in the monthly remittance reports, . . . [defendant] owes the IPF contributions in the amount of $5,167.53, and owes the IMI contributions in the amount of $366.16." Stupar Decl. ¶ 9; *see* Compl. ¶ 16; Pls.' Mem. at 5.

In addition, under ERISA and the relevant agreements in this case, plaintiffs are entitled to interest at a rate of fifteen percent per annum from the due date of each monthly payment and an additional amount equal to the greater of interest on the unpaid contributions or liquidated damages at a rate of twenty percent of the total contributions owed. 29 U.S.C. § 1132(g)(2)(B)–(C); Collection Procedures at 2. Plaintiffs point to Mr. Stupar's declaration for the calculations of interest and liquidated damages. *See* Pls.' Mem. at 6–7. By doing so, they have adequately demonstrated that defendant owes interest on the unpaid amounts through January 24, 2018 in the amount of $830.05,[1] and that it owes liquidated damages in the amount of $1,106.74. Stupar Decl. ¶ 9.

B. **Unreported Months**

As of January 2018, defendant had not submitted remittance reports for the months of March 2017 through December 2017. Stupar Decl. ¶ 10; Pls.' Mem. at 5–6; *see also* Compl. ¶ 20 (alleging missed reports through September 2017 as of the date the lawsuit was filed). Defendant

---

1  Plaintiffs ask for $ 781.75 in interest, Pls.' Mem. at 6; Stupar Decl. ¶ 9, but that calculation appears to be incorrect. Fifteen percent of $5,533.69 equals $830.05.

was also required to make contributions during those months, and they remain unpaid. Stupar Decl. ¶ 10; Pls.' Mem. at 5–6; *see also* Compl. ¶ 20.

Plaintiffs have provided the Court with the affidavit of Mr. Stupar to support a damages award for these unpaid months as well. Plaintiffs have calculated that defendant owes $30,873.60 to IPF, and $2,166.90 to IMI for the period of March 2017 through December 2017. Stupar Decl. ¶¶ 11–12; Pls.' Mem. at 5–7.[2] In the absence of the necessary reports, plaintiffs estimated the unpaid contributions due by calculating the average of the five previous months for which reports were submitted and multiplying it by ten months. *See* Stupar Decl. ¶¶ 10–12. The Court accepts this calculation as a reasonable estimate of the unpaid contributions. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430, 434 (D.D.C. 2010) (approving plaintiffs' estimate of damages based on an average of unpaid contributions reported in the previous three months); *Int'l Painters & Allied Trades Indus. Pension Fund v. Advanced Pro Painting Servs.*, 697 F. Supp. 2d 112, 116–17 (D.D.C. 2010) (accepting plaintiffs' estimate based on the average of unpaid contributions in previous two months); *see also Nat'l Shopmen Pension Fund v. Builders Metal Supply, Inc.*, 304 F.R.D. 47, 50 (D.D.C. 2014) (approving plaintiffs' estimate of damages based on the highest amount of hours reported in any month during the preceding twelve month period multiplied by the applicable contribution rate). However, the Court will also order defendant to submit to an audit, and it will retain jurisdiction over the case so that plaintiffs may inform the Court of the results of the audit, including whether

---

2     The complaint estimates unpaid contributions for the unreported months at an amount substantially below that announced in plaintiffs' motion for default judgment. *See* Compl. ¶¶ 25, 27 (estimated amounts owed to IPF and IMI are $21,611.55, $1,516.90, respectively). The Court understands the larger amount cited to in the motion to reflect a calculation that includes the additional months of September through December 2017.

there is any variance between the amount owed and the amount of the estimate.³ *See Advanced Pro Painting Servs.*, 697 F. Supp. 2d at 117 (requiring the plaintiffs to modify the judgment if the audit reveals that the unpaid contributions are less than the estimated amount).

In addition, plaintiffs have demonstrated that defendant owes them interest and liquated damages on the unpaid amounts as provided for both in 29 U.S.C. § 1132(g)(2) and pursuant to the Collection Procedures. Plaintiffs have calculated that defendant owes interest on the unpaid amounts through January 24, 2018 in the amount of $1,992.03. Stupar Decl. ¶¶ 11–12. They have also calculated that they are entitled to liquidated damages in the amount of twenty percent of the total unpaid contributions, which equals payments in the amount of $6,608.10 to plaintiffs. *Id.*

### C. Attorneys' Fees and Costs

Plaintiffs have also requested that the Court order defendant to pay $2,625.50 in attorneys' fees and $585.00 for costs associated with this case. Pls.' Mem. at 7–8; Compl. ¶ 41(H). ERISA provides that in an action to recover contributions pursuant to a collective bargaining agreement, "the court shall award the plan . . . reasonable attorney's fees and costs" if the plan receives judgment in its favor. 29 U.S.C. § 1132(g)(2)(D).

"The reasonableness of the fees requested . . . is a 'judgment call' which only the Court can make." *Combs*, 105 F.R.D. at 475. Reasonable attorneys' fees are "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984), citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see Bd. of*

---

3     Plaintiffs do not ask the Court to retain jurisdiction over this matter in order to permit additional or supplemental judgments upon conclusion of the audit. Rather, they assert that the "case can be closed while the audit is performed," and that they "will bring a separate collection action to address the matter." Pls.' Mem. at 10. However, the Court finds that retaining jurisdiction over the case will provide the most efficient means of modifying the judgment if that proves to be necessary.

*Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (applying this standard in calculating attorneys' fees under ERISA). When preparing a fee application, plaintiffs must provide the Court with "sufficiently detailed information about the hours logged and the work done" "based on contemporaneous time records" in order to justify the hours expended. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). And the reasonableness of the hourly rate is determined by referencing the "prevailing market rates in the relevant community" and producing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 895 n.11.

Here, plaintiffs offer the declaration of their counsel, R. Richard Hopp, to establish the amount of fees and costs owed in this case. Decl. of Att'ys' Fees & Legal Costs [Dkt. # 7-3] ("Hopp Decl."). The declaration attaches documentation outlining the 8.9 hours expended by Mr. Hopp on this case, and it states that Mr. Hopp billed his time at $295.00 per hour. *See* Ex. 1 to Hopp Decl. [Dkt. # 7-3] ("Time Records"). Mr. Hopp avers that he has been practicing labor and employee benefits law since 1991, and that his firm has "a negotiated fee of $295.00 per hour for attorney time with his client for the performance of this type of legal representation." Hopp Decl. ¶ 4.

Although plaintiffs do provide sufficient information regarding the hours expended in this case in the form of contemporaneous time records, the evidence supplied regarding the reasonableness of the hourly rate is a bit sparse. To support the reasonableness of his rate, Mr.

Hopp states that he would be entitled to $796.00 per hour under the *Laffey* Matrix.[4] Hopp Decl. ¶ 4. He also includes information about his legal background and he avers that he has been a practicing attorney for over twenty-five years, *see id.* ¶ 1, so that gives the Court some reference point to determine the reasonableness of the hourly rates.

Based on the documentation provided, and the hours expended on this case, the Court concludes that plaintiffs' request for attorneys' fees is reasonable. Therefore, it will award plaintiffs $2,625.50 in attorneys' fees.

Plaintiffs also seek legal costs in the amount of $185.00 incurred for service of process and $400.00 incurred to file the complaint in this case. Hopp Decl. ¶¶ 5–6. Based on the documentary evidence provided, which shows that plaintiffs did incur these costs, Ex. 2 to Hopp Decl. [Dkt. # 7-3]; Ex. 3 to Hopp Decl. [Dkt. # 7-3], the Court will award plaintiffs their costs totaling $585.00.

---

4      It is not entirely clear how Mr. Hopp came up with $796.00 as the *Laffey* Matrix amount, but it is clear that no matter how one utilizes the matrix, the requested fee falls well below rates that this Court regularly deems to be reasonable. The *Laffey* Matrix is "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985)," *Covington v District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995), and it is recommended to be the presumptive maximum for "complex federal litigation." *Laffey*, 572 F. Supp. at 372–74 (D.D.C. 2015). The Court may take judicial notice of the hourly rates provided in the *Laffey* Matrix since the rates "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Palmer v. Barry*, 704 F. Supp. 296, 298 (D.D.C. 1989) (taking judicial notice of the *Laffey* Matrix rates as applied in other cases and concluding that an hourly rate of $165 for lawyers who have twenty years of experience in federal litigation is reasonable). Two competing versions of the matrix have developed in the past thirty years: one developed by the United States Attorney's Office for the District of Columbia ("USAO *Laffey* Matrix"), which adjusts the original matrix for inflation using the Consumer Price Index for All Urban Consumers, and a second "enhanced" fee schedule, which adjusts the matrix rates for inflation using the Legal Services Index ("LSI *Laffey* Matrix"). *See Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015); *Eley v. District of Columbia*, 793 F.3d 97, 101–02 (D.C. Cir. 2015). For the 2017-2018 year, the hourly rate for an attorney with twenty-six years of litigation experience under the USAO *Laffey* Matrix is $563.00 and under the LSI *Laffey* Matrix is $864.00. *See* USAO Attorney's Fees Matrix – 2015-2018, https://www.justice.gov/usao-dc/file/796471/download; *see* Laffey Matrix, http://www.laffeymatrix.com (last visited July 10, 2018).

## II. Plaintiffs are also entitled to equitable relief.

In an action to enforce the payment of unpaid contributions and in which judgment is granted in favor of the plan, ERISA also provides that the court "shall award . . . such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1332(g)(2)(E). Plaintiffs seek two forms of equitable relief: (1) they ask the Court to order defendant to submit to an audit of its payroll records, and (2) they seek an injunction to prevent defendant from continuing to fail to report and pay contributions to plaintiffs. Compl. ¶¶ 33–40, 41(D), 41(G); Pls.' Mem. at 8–10.

First, plaintiffs ask the Court to order defendant to submit to a payroll audit. Compl. ¶¶ 33–35; Pls.' Mem. at 9–10. Pursuant to the relevant agreements in this case, defendant is obligated to submit monthly remittance reports and to make contributions to plaintiffs. To ensure that defendant is providing accurate information and paying the required contributions, the Collection Procedures entitle plaintiffs to conduct audits of defendant's books and records. Stupar Decl. ¶ 16; Collection Procedures at 3 ("Audits will be conducted to ensure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as a result of an audit, the employer will be assessed the cost of the audit.").

Accordingly, the Court finds that plaintiffs have demonstrated that they are entitled to the requested equitable relief under the terms of the relevant agreements. *See, e.g.*, *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 150 (D.D.C. 2016) (directing defendant to "deliver its books and records . . . to [p]laintiffs' auditor and pay any delinquent contributions uncovered through the audit"); *LaSalle Glass & Mirror Co.*, 267 F.R.D. at 435 (finding plaintiffs entitled to injunctive relief and ordering defendant to submit to an audit). Further, in this case, "equitable relief is warranted because defendant 'has demonstrated no willingness to comply with either its

contractual or statutory obligations or to participate in the judicial process.'" *Fanning v. Warner Ctr., L.P.*, 999 F. Supp. 2d 263, 267 (D.D.C. 2013), quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 26 (D.D.C. 2009).

Therefore, the Court will order defendant to supply plaintiffs, by July 31, 2018, with all relevant employment and payroll records reasonably required to determine defendant's contribution obligations for work performed during the months of March 2017 to the date of the audit.

Second, plaintiffs seek an injunction to prevent defendant from continuing to fail to report and pay contributions to plaintiffs. Compl. ¶¶ 36–40, 41(G); Pls.' Mem. at 10. They ask the Court to direct defendant "to comply with its obligations to correctly report and contribute to the [p]laintiffs in a timely manner in the future." Compl. ¶ 41(G); Pls.' Mem. at 10 ("Plaintiffs ask the Court for an order to enjoin the [d]efendant from violating the terms of its Agreements . . . by requiring the [d]efendant: 1) to submit all remittance reports accurately to the [p]laintiffs no later than the fifteenth day of the month following the month in which the [d]efendant performed the work, and 2) to pay the [p]laintiffs all contributions owed no later than the fifteenth day of the month following the month in which the [d]efendant performed the work.").

Because the Court has the discretionary power to award plaintiffs "such other legal or equitable relief as the court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), the Court concludes that plaintiffs' requested relief is appropriate. However, it will grant this aspect of plaintiffs' motion by requiring defendant to comply with its contractual and statutory obligations to plaintiffs, instead of prohibiting defendant from *not* complying with those obligations. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Newburgh Glass & Glazing, LLC*, 468 F. Supp. 2d 215, 218–19 & n.2 (D.D.C. 2007) (awarding plaintiffs the same form of equitable relief).

**CONCLUSION**

For the foregoing reasons, the Court will grant plaintiffs' motion for default judgment. It will order defendant to pay unpaid contributions, as well as interest and liquidated damages on those unpaid amounts. The Court will also order defendant to submit to a payroll audit, and to comply with its reporting and contribution obligations to plaintiffs under ERISA and the relevant agreements.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 11, 2018